# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| BRENDA GEIGER, IESHA MARIE CRESPO, JESSICA 'CHARM' KILLINGS, and LUCY PINDER,<br><br>Plaintiffs,<br><br>v.<br><br>GEN X CABARET, LLC d/b/a GEN X CABARET<br><br>Defendant. | Case No.  2:21-cv-3505-BHH<br><br><br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

Brenda Geiger, Iesha Marie Crespo, Jessica 'Charm' Killings and Lucy Pinder (collectively, "Plaintiffs"), file this Complaint against Gen X Cabaret, LLC d/b/a Gen X Cabaret ("Defendant") respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, Gen X Cabaret located in North Charleston, South Carolina ("Gen X" or the "Club").

2.     As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of publicity relating to Defendant's misappropriation of each Plaintiffs' image and likeness; d) violation of

South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*; e) defamation; and f) various common law torts, including conversion.

3.     In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.     This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.     Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.     According to publicly available records, defendant Gen X Cabaret, LLC is a limited liability corporation formed under the laws of the state of South Carolina, with its principal place of business located at 7219 Cross County Road North Charleston, South Carolina 29418, which operates Gen X Cabaret, which is located at 7219 Cross County Road North Charleston, South Carolina 29418, ("Gen X").

8.     Venue is proper in the United States District of South Carolina because Defendant' principal place of business is located at North Charleston, South Carolina.

9.     A significant portion of the alleged causes of action arose and accrued in North Charleston, South Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in North Charleston, South Carolina.

## PARTIES

*Plaintiffs*

10.    Plaintiff Brenda Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

11.    Plaintiff Iesha Marie Crespo ("Crespo") is a well-known professional model, and a resident of Miami-Dade County, Florida.

12.    Plaintiff Jessica 'Charm' Killings ("Killings") is a well-known professional model, and a resident of Los Angeles County, California.

13.    Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of England.

*Defendant*

14.    Defendant is a domestic corporation formed under the laws of the state of South Carolina and registered to conduct business in South Carolina.  At all times relevant to this action Gen X Cabaret LLC operated Gen X Cabaret in North Charleston, South Carolina

15.    Service of process may be perfected upon Defendant Gen X Cabaret, LLC by serving the registered agent for service of process, Paul Doolittle, who can be served in his individual capacity at 210 Wingo Way #201, Mount Pleasant, South Carolina, 29464.

## FACTUAL ALLEGATIONS

16.    Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

17.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling

contracts, and establish each of their individual brands. In furtherance of establishing, and

maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and

brands, for which they model.

18.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by

Defendant to make it appear that they worked at, endorsed, or were otherwise associated or

affiliated with Defendant.

19.    In the case of each Plaintiff, this apparent claim was false.

20.    Moreover, this misappropriation occurred without any Plaintiff's knowledge,

consent, or authorization.

21.    No Plaintiff has ever received any remuneration for Defendant's improper and

illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have

caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

22.    Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas

because the Images they misappropriated came from Plaintiffs' own social media pages, which

each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their

brand.

### Plaintiffs' Individual Backgrounds and Careers

23.    Plaintiff Geiger is a professional model and actress who performed with eight-

time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer

Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The

Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous

magazines such as *Show, Maxim* and *Raw*, and has modeled for several product campaigns such

as Primitive Clothing, where she currently has her own line of custom skateboard decks.

24.    That we know of, Geiger is depicted in the photos in Exhibit "A" to promote Gen

X on its Facebook page. This Image was intentionally altered to make it appear that Geiger was either a stripper working at Gen X, that she endorsed Gen X, or that she was otherwise associated or affiliated with Gen X.

25.     Geiger has never been employed at Gen X, has never been hired to endorse Gen X, has never been otherwise associated or affiliated with Gen X, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

26.     Plaintiff Crespo is an American model and video star with combined social media following of nearly a million. Crespo has been featured in a number of magazines and has the covers of *Models Latina* March 2015 and *Shock* magazine. Crespo has also appeared in several catalogues such as Raw and Uncut and appeared in a dozen music videos for artists such as Rick Ross and French Montana.

27.     That we know of, Crespo is depicted in the photos in Exhibit "B" to promote Gen X on its Facebook pages. This Image was intentionally altered to make it appear that Crespo was either a stripper working at Gen X, that she endorsed Gen X, or that she was otherwise associated or affiliated with Gen X.

28.     Crespo has never been employed at Gen X, has never been hired to endorse Gen X, has never been otherwise associated or affiliated with Gen X, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.     Plaintiff Killings is a model and music video star.  She has appeared in a number of popular magazines such as *SHOW, Blackmen, Straight Stuntin, Smooth*, and *Mixed*. Killings has also appeared in several music videos as the lead talent including Far East Movement ft.

Snoop Dogg's video "OMG," Slim Thug and Baby Bash's video "Swanana," Big Sean and Chris Brown's video "My Last," Bow Wow's video "Pretty Lady," and Jay Sean ft. Nicki Minaj's video "2012." Killings has 1.9 million Instagram followers and 53.1 thousand Twitter followers.

30.    That we know of, Killings is depicted in the photo in Exhibit "C" to promote Gen X on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Killings was either a stripper working at Gen X, that she endorsed Gen X, or that she was otherwise associated or affiliated with Gen X.

31.    Killings has never been employed at Gen X, has never been hired to endorse Gen X, has never been otherwise associated or affiliated with Gen X, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.    Plaintiff Pinder is, and at all times relevant to this action was, an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in publications such as *FHM*, *Nuts*, *Loaded*, *The Daily Star*, and hundreds of others. Pinder has appeared on *FHM's* list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in *Nuts*, entitled "The Truth About Women" and appeared on the final edition of the *Nuts* magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others, and on large national and international advertising campaigns. Pinder has an established an acting career with many TV appearances and Film credits. She has appeared on shows such as *I'm Famous and Frightened*, *Soccer AM*, *Weakest Link*, *Nuts Tv (host) MTV's TMF (presenter)*, *Hotel Babylon*, and *Team and Bo!* in the USA. Pinder was also a contestant on *Celebrity Big Brother*. Pinder starred in films

- 6 -

such as *The Seventeenth Kind*, *Age of Kill*, and *Warrior Savitri*. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with *Help for Heroes* appearing in the *Hots Shots* fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and Twitter.

33.     That we know of, Pinder is depicted in the photos in Exhibit "D" to promote Gen X on its Instagram and Facebook pages. This Image was intentionally altered to make it appear that Pinder was either a stripper working at Gen X, that she endorsed Gen X, or that she was otherwise associated or affiliated with Gen X.

34.     Pinder has never been employed at Gen X, has never been hired to endorse Gen X, has never been otherwise associated or affiliated with Gen X, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activities and Misappropriation***

35.     Defendant operates (or operated, during the relevant time period,) Gen X, where they are (or were) engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

36.     In furtherance of its promotion their promotion of Gen X, Defendant owns, operates, and control Gen X's social media accounts, including its Facebook, Twitter, and

- 7 -

Instagram accounts.

37.    Defendant used Gen X's Facebook, Twitter, and Instagram accounts to promote Gen X, and to attract patrons.

38.    Defendant did this for their own commercial and financial benefit.

39.    Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Gen X, endorsed Gen X, or was otherwise associated or affiliated with Gen X.

40.    Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Gen X to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

41.    Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Gen X, and at no point have any of the Plaintiffs ever endorsed Gen X or otherwise been affiliated or associated with Gen X.

42.    All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

43.    Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

44.    Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

*Standard Business Practices in the Modeling Industry*

45.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

46.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

47.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

*Defendant's Misappropriation of Plaintiffs' Images*

48.     Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Gen X.

49.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

50.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Gen X.

51.     At no point was any Plaintiff ever contacted by Defendant, or any representative of Defendant, to request the use of any of Plaintiffs' Images.

52.    Defendant did not obtain, either directly or indirectly, permission to use any of Plaintiffs' Images.

53.    Defendant never paid any Plaintiff for its use of her Images on any promotional materials, including Gen X website, Twitter, Facebook, or Instagram accounts.

54.    Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

**FIRST CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

55.    The advertisements at issue in this action were false and misleading under 15 U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or affiliated with Gen X, nor had they agreed to appear in Gen X's advertisements.

56.    Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

57.    Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Gen X.

58.    Defendant's publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

59.    Even though Defendant was at all times aware that the Plaintiffs neither worked at nor endorsed Gen X, Defendant nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiff's employment at or affiliation with Gen X.

60.    Defendant knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Gen X.

61.    Defendant's use of Plaintiffs' Images caused consumer confusion as to Plaintiffs'

sponsorship of, employment at, or other relationship with Gen X, and the goods and services provided by Gen X.

62.     Defendant's unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)

63.     Defendant's use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with Gen X, or worked at, sponsored, or approved of Gen X's goods, services or commercial activities.

64.     This was done to promote and attract clientele to Gen X, and thereby generate revenue for the Defendant, for Defendant's commercial benefit.

65.     Even though Defendant was at all times aware that the Plaintiffs were neither affiliated, connected or associated with Gen X, nor worked at, sponsored, or approved of Gen X's goods, services or commercial activities, Defendant nevertheless used Plaintiffs' Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Gen X.

66.     Defendant knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at Gen X.

67.     Defendant's use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of Gen X, and the goods and services provided by Gen X.

68.     Defendant's unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### (Common Law Right of Publicity – Misappropriation of Likeness)

69.    Defendant has appropriated each Plaintiff's likeness for Defendants commercial purposes without authority or consent from Plaintiffs.

70.    Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Gen X's website or related social media accounts as part of Defendant's advertising campaign.

71.    Gen X's website and social media accounts were designed to advertise and attract business to Gen X and generate revenue for Defendant.

72.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

73.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

74.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

75.    Upon information and belief, Defendant's use of Plaintiffs' Images did in fact attract clientele and generate business for Gen X.

76.    At no point did Defendant ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

77.    Defendant was at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

78.    At no point did Defendant ever compensate Plaintiffs for its unauthorized use of their Images.

79.    Plaintiffs have been damaged in amounts to be proved at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*)**

80.    Defendant operated Gen X website and social media accounts in order to promote Gen X, to attract clientele thereto, and to thereby generate revenue for Defendant.

81.    As such, Defendant's operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of South Carolina.

82.    Defendant published Plaintiffs' Images on Gen X website and social media accounts to create the false impression that Plaintiffs were either strippers working at Gen X, endorsed Gen X, or were otherwise affiliated, associated, or connected with Gen X.

83.    As such, Defendant's intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Gen X.

84.    Defendant thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of South Carolina.

85.    Defendant advertising practices offends the public policy of South Carolina insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendant' scommercial benefit.

86.    Defendant's advertising practices are immoral, unethical, oppressive and

unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Gen X.

87.     Defendant's advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with, Gen X.

88.     There are no benefits to Defendant's advertising practices as set forth hereon except a benefit to Defendant's own commercial interests.

89.     Defendant's aforementioned acts or practices have happened in the past and/or have the potential for repetition, and have an adverse impact on the public as Defendant has ongoing business.

90.     As a result of Defendant's unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

91.     As a result of Defendant's unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Defamation)

92.     As detailed throughout this Complaint, Defendant has published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

93.     Defendant's publication of said Images constitutes a representation that Plaintiffs were either employed by Gen X, that they endorsed Gen X, or that they had some affiliation with Gen X.

- 14 -

94.      None of these representations were true.

95.      In publishing Plaintiffs' altered Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs were strippers working at Gen X, or endorsed Gen X.

96.      Defendant was at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Gen X, had no affiliation with Gen X, had not consented to the use of their Images, and had not been compensated for the use of their Images.

97.      In the alternative, Defendant published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Gen X, had no affiliation with Gen X, had not consented to the use of their Images, and had not been compensated for the use of their Images.

98.      Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

99.      Defendant's publication of Plaintiffs' Images constitutes defamation under South Carolina law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

100.      Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under South Carolina law because said publication would tend to injure each Plaintiff in her

trade, business, and profession as a professional model.

101.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendant's publication of the Images support.

102.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under South Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

103.    Defendant's publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

104.    Plaintiffs are further informed and believe and hereon allege that Defendant maintained or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

105.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

106.    Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

107.    Defendant further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

108.    Defendant breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

109.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and South Carolina law, were not violated.  Defendant breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

110.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

111.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

112.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

113.    By the conduct detailed above, Defendant converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

114.    As a result of Defendant's unlawful conversion of Plaintiffs' Images, and

publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

115.    As set forth in detail above, Defendant published Plaintiffs' Images in order to promote Gen X to the general public and potential clientele.

116.    Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Gen X, or endorsed Gen X.

117.    Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

118.    Upon information and belief, Defendant did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

119.    Defendant have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to their Clubs.

120.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

121.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

122.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

123.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

124.    Although Defendant has availed themselves of the benefit of being associated

with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendant has not compensated Plaintiffs.

125.    Plaintiff is therefore entitled to reasonable compensation for Gen Xs' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Gen X;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(e) For such other and further relief as the Court may deem just and proper.

*[ SIGNATURES CONTAINED ON FOLLOWING PAGE ]*

- 19 -

Respectfully,

/s/ John V. Golaszewski
John V. Golazweski
New York Bar No. 4121091
*Pro Hac Vice Application Pending*
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th Floor
New York, New York 10019
(646) 872-3178
john@casaslawfirm.com

/s/ Joshua E. Slavin
**THE LAW OFFICES OF JOSHUA E. SLAVIN**
PO Box 762
Mount Pleasant, SC 29465
P: 843-619-7338
F: 888-246-8914
josh@attorneycarolina.com
Fed. Bar No. 12602

*Attorneys for Plaintiffs*

October 27, 2021
Mount Pleasant, SC